**Nos. 23-1980, 23-2076**

# United States Court of Appeals for the Federal Circuit

JUNIPER NETWORKS, INC.,
*Appellant*,

*v.*

SWARM TECHNOLOGIES, LLC,
*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in *Inter Partes* Reviews Nos. IPR2022-00141, IPR2021-01445

**APPELLANT JUNIPER NETWORKS, INC.'S REPLY BRIEF**

Alan M. Fisch
R. William Sigler
Jeffrey M. Saltman
Matthew R. Benner
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015

*Counsel for Appellant*
*Juniper Networks, Inc.*

March 18, 2024

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ................................................................................................ 3

I. The Board's Claim Construction Was Erroneous. .................................... 3

A. Swarm's Response, Like the Board's Decisions, Fails to Correctly Apply *Phillips v. AWH Corp*. ............................................ 3

B. The Intrinsic Evidence Contradicts the Board's Construction. ......... 6

C. The Extrinsic Evidence From Both Experts Further Confirms That the Board's Construction Is Erroneous. .................................. 11

II. Swarm's "Procedurally Proper"Argument Mischaracterizes the Record. ............................................................................................ 16

III. Substantial Evidence Doesn't Support the Board's Decisions, Even Under Its Construction. ......................................................................... 19

A. No Record Evidence Shows That a Broadcast Packet Necessarily Would Impart Information to the Controller. ................................. 21

B. The Board Incorrectly Failed to Consider AppleTalkBook's "Zones" Teachings Indicating That the Broadcast Packet Wouldn't Be Sent to the Controller. ............................................... 24

1. The "Zones" Discussion Responded to Swarm's Arguments.. 24

2. Given AppleTalkBook's "Zones," Substantial Evidence Doesn't Show That Communication Will Always Occur. ...... 29

CONCLUSION ............................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*AC Techs., S.A. v. Amazon.com, Inc.*,
912 F.3d 1358 (Fed. Cir. 2019)........23

*Anacor Pharms., Inc. v. Iancu*,
889 F.3d 1372 (Fed. Cir. 2018)........26

*Apple Inc. v. Andrea Elecs. Corp.*,
949 F.3d 697 (Fed. Cir. 2020)........24

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015)........25, 26

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023)........27

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023)........24, 26

*Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*,
527 F.3d 1300 (Fed. Cir. 2008)........5

*Ericsson Inc. v. Intell. Ventures I LLC*,
901 F.3d 1374 (Fed. Cir. 2018)........24

*Ex Parte Mccormick*,
Appeal 2021-002928, 2021 WL 5411155 (P.T.A.B. Nov. 17, 2021)........20

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016)........26

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012)........26

*In re Glatt Air Techniques, Inc.*,
630 F.3d 1026 (Fed. Cir. 2011)........23

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022)........7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................................ 1

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016)................................................................ 19, 20

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
76 F.4th 1376 (Fed. Cir. 2023) ...................................................................... 27

*Sequoia Tech., LLC v. Dell, Inc.*,
66 F.4th 1317 (Fed. Cir. 2023) ........................................................................ 5

*Sud-Chemie, Inc. v. Multisorb Techs., Inc.*,
554 F.3d 1001 (Fed. Cir. 2009)...................................................................... 23

*UltimatePointer, L.L.C. v. Nintendo Co.*,
816 F.3d 816 (Fed. Cir. 2016)........................................................................... 5

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
412 F.3d 1319 (Fed. Cir. 2005)...................................................................... 20

**Statutes**

35 U.S.C. § 112 ........................................................................................... 6, 8

## INTRODUCTION

The conclusion of the briefing here confirms that the Board erred in construing "communication" in a vacuum, without reference to the specification, and contrary to the intrinsic and extrinsic record evidence. Indeed, Swarm's response and the Board's decision both fail to correctly apply the governing *Phillips v. AWH Corp.* precedent, where this Court explained that:

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.[1]

Here, the record confirms that the ordinary and customary meaning of "communication"—and as used in the "without any communication with the controller" limitation that the Board relied on to confirm all challenged claims—refers to communication in which the controller is an active participant, not an inadvertent recipient of a one-way broadcast. After all, "communication" has many meanings in ordinary usage that depend on the context in which it's used. And here, per *Phillips*, the shared specification of Swarm's '004 and '275 patents provides the context for its use in the limitation at issue. In particular, the specification describes a problem in prior-art parallel processing systems, where too much CPU bandwidth is

[1] 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).

consumed by "distributing" tasks and "responding" to messages.[2] And the specification describes a solution to that problem that requires co-processors to autonomously retrieve tasks, thereby eliminating the need for the CPU to distribute tasks and respond to messages.[3] The specification doesn't describe any other possible reason to avoid communication with the CPU/controller, in any context.

Given the specification's disclosure, Juniper and its expert, Dr. Weissman, appropriately showed that the proffered Leong-AppleTalkBook combination satisfied the challenged claims' limitation requiring the addition of co-processors on a plug-and-play basis "without any communication with the controller," because the combination's controller wouldn't need to do anything, much less communicate with anything, when adding co-processors. And when cross-examined at deposition, Swarm's expert, Dr. Nelson, confirmed Juniper's understanding that the Leong-AppleTalkBook combination's broadcast packets don't qualify as excluded "communication." As Dr. Nelson testified:

> [When] the broadcast is sent but a particular processor does not respond[,] I would classify that as not a communication between the broadcaster and that particular processor.[4]

But the Board, on its own initiative and without any supporting evidence,

---

[2] *E.g.*, Appx85 ('004 patent at 1:61-2:15). The '275 specification is the same.

[3] *See*, *e.g.*, *id*.

[4] Appx6969-6970 (at 17:14-18:2).

construed the excluded "communication" to encompass any network-wide one-way broadcast, regardless of whether the controller is configured to understand it, respond to it, or do anything as a result. Because the Board confirmed all challenged claims based on that erroneous construction, this Court should reverse.

And beyond that construction, substantial evidence still doesn't support the Board's decisions for two reasons. First, even if "communication" may include one-way broadcasts, there's no evidence that the broadcast packets in Juniper's proffered combination would impart or communicate any information to the combination's "controller." Second, given AppleTalkBook's teachings of "zones," which the Board disregarded, these broadcast packets wouldn't necessarily be sent to the controller at all. Accordingly, this Court should reverse the Board's construction, and otherwise remand on all challenged claims in both IPRs.

# ARGUMENT

## I. THE BOARD'S CLAIM CONSTRUCTION WAS ERRONEOUS.

### A. Swarm's Response, Like the Board's Decisions, Fails to Correctly Apply *Phillips v. AWH Corp*.

The dispositive construction of "communication" here relied solely on the Board's understanding of the words "any" and "communication," interpreted in a vacuum. The Board didn't rely on any specification support, consider other claim language, or credit the opinions of Juniper's and Swarm's experts, who both disagreed with that construction. And Swarm's response repeats the Board's errors.

Like the Board, Swarm starts the claim-construction analysis with an assumption about the plain and ordinary meaning of "without any communication." According to Swarm: "The words 'any' and 'communication' are straightforward and commonplace. Their meanings are plain."[5] Like the Board, Swarm then only consults the specification to check if "passages cited by Juniper reveal an intentional disclaimer" or a "special definition" disproving its assumption.[6]

*Phillips v. AWH Corp.* rejected such an approach to claim construction. Indeed, this Court stated in that seminal decision that:

> Assigning such a limited role to the specification, and in particular requiring that any definition of claim language in the specification be express, is inconsistent with our rulings that the specification is "the single best guide to the meaning of a disputed term."[7]

As *Phillips* further explains, previous cases "suggested a methodology for claim interpretation in which the specification should be consulted only after a determination is made, whether based on a dictionary, treatise, or other source, as to the ordinary meaning."[8] *Phillips* rejected that methodology, because it unduly focused "on the abstract meaning of words rather than on than on the meaning of claim

---

[5] Resp. Br. at 31.

[6] *Id*. at 32 (internal quotation marks omitted); *accord id*. at 1, 23 (similar).

[7] 415 F.3d at 1320-21.

[8] *Id*. at 1320.

terms within the context of the patent."[9] Thus, one doesn't ascertain a term's ordinary meaning by beginning with its panoply of English definitions, then checking whether the specification whittles that down with lexicography or disclaimer. Rather, "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan *after* reading the entire patent," including the specification.[10]

Here, even worse than starting with a general dictionary, like in the *Western Digital* line of cases that *Phillips* rejected, Swarm and the Board started the analysis with only an assumption. But they still erroneously limited their consideration of specification to checking for express disclaimer and lexicography.[11] This Court has repeatedly reversed or rejected such interpretations of claim language in isolation, divorced from the specification and the other claim language.[12]

Accordingly, both the Board and Swarm improperly ignored the intrinsic

---

[9] *Id*. at 1321.

[10] *Id*. (emphasis added); *accord id*. at 1313 (POSITA is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

[11] *See*, *e.g.*, Resp. Br. at 1 (arguing "Board carefully reviewed each passage of the specification cited by Juniper and found none of the passages to suggest that a special definition was given to 'any communication'…."); *id*. at 23 (same).

[12] *See*, *e.g.*, *Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1308 (Fed. Cir. 2008) (rejecting construction "[d]ivorced from the specification" despite it being plausible in isolation); *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 824 (Fed. Cir. 2016) (same); *Sequoia Tech., LLC v. Dell, Inc.*, 66 F.4th 1317, 1326 (Fed. Cir. 2023) (reversing and construing term consistent with "only explanation in the patent for how metadata is minimized").

evidence, detailed in Juniper's opening brief and further below, that confirms that the Board erred by "broadly" construing "the claim term 'communication,'" in the negative limitation at issue, "as including, among other things, one-way messaging that does not require a response."[13]

### B. The Intrinsic Evidence Contradicts the Board's Construction.

As noted, *Phillips* held that the specification "is the single best guide to the meaning of a disputed term."[14] And this Court further explained in that case that this follows from the specification's relationship to the written description requirement of 35 U.S.C. § 112:

> The importance of the specification in claim construction derives from its statutory role. The close kinship between the written description and the claims is enforced by [§ 112's] requirement that the specification describe the claimed invention in "full, clear, concise, and exact terms." In light of the statutory directive…, the specification necessarily informs the proper construction of the claims.[15]

Thus, the '004 and '275 patents' shared specification here must describe what the inventor actually invented. And although "without any communication" is a negative limitation—i.e., something the invention excludes—that doesn't mean the specification can disclose it by remaining silent, as Swarm appears to assume. Rather, § 112 also requires that the specification describe a negative limitation by,

---

[13] Appx66.

[14] 415 F.3d at 1315.

[15] *Id*. at 1316 (internal citations and parentheticals omitted).

for example, providing a reason to exclude the element or describing disadvantages of alternatives that include it.[16]

Here, as Juniper explained, the ’004 and ’275 specification never specifically addresses communication, or a reason to avoid it, in the context of adding co-processors. And the only reason to exclude such communication that’s arguably described in the specification would be the burden on the CPU/controller associated with “distributing” tasks and “responding” to messages—i.e., “communication” where the CPU/controller actively participates and consumes its resources.[17]

Indeed, Swarm continues to argue, as it did in the IPRs, that “one of the primary goals of the ’004 and ’275 patents ‘is to reduce the burdens on the CPU or ‘controller’ in a multiprocessor system.’”[18] This is based on the specification’s explanation that:

> Presently known multiprocessing approaches are disadvantageous in that a significant amount of CPU bandwidth is consumed by ***task distribution***; waiting for tasks to be completed before ***distributing new***

---

[16] *E.g.*, *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016-17 (Fed. Cir. 2022) (“For negative claim limitations,…there is adequate written description when, for example, ‘the specification describes a reason to exclude the relevant [element].’ A reason to exclude an element could be found in ‘statements in the specification expressly listing the disadvantages of using’ that element. Another reason could be that the specification ‘distinguishes among’ the element and alternatives to it.”) (internal citations omitted).

[17] *See* Juniper Br. at 26-30.

[18] Resp. Br. at 33 (quoting Juniper Br. at 26); *see also* Appx85 (’004 patent at 1:56-2:1, describing this goal); Appx90 (at 11:35-45), referring to “controller (CPU)”).

> ***tasks*** (often with dependencies on previous tasks); ***responding to interrupts*** from co-processors when a task is completed; and ***responding to other messages*** from co-processors.[19]

All other relevant passages consistently describe this burden as being associated with "distributing" tasks and "responding" to messages and management activity that necessarily would consume CPU/controller bandwidth. By contrast, the specification never describes any reason to avoid sending one-way broadcast packets that don't require the controller to respond or otherwise do anything.

This burden of "distributing" tasks and "responding" to messages is the only reason that Swarm has ever identified for excluding communication with the controller.[20] Assuming that this reason to exclude is relevant to adding co-processors, as Swarm must,[21] it only confirms that the Board erred by "broadly" construing "communication" to "includ[e], among other things, one-way messaging that does

---

[19] Appx85 (at 1:61-2:1) (emphasis added); *accord*, *e.g.*, *id.* (at 2:4-7) ("A multiprocessor architecture in thus needed which reduces CPU management overhead….").

[20] *See*, *e.g.*, Appx5090 (¶ 110) (Dr. Nelson opining that requiring CPU to "process a broadcast packet" would be "wholly incompatible with the goals…to reduce burden on the CPU"); Appx4296-4297 (same, in response to petition); Appx4374-4375 (same, in other IPR); *see also* Resp. Br. at 33 (similar); Appx7106 (Dr. Nelson clarifying above-cited declaration opinions).

[21] The block-quoted passage above and all other relevant passages describe this burden in the context of task distribution, rather than adding co-processors. But if those portions of the specification don't support the negative limitation at issue, nothing does, since the specification never addresses communication when adding co-processors or any reason to exclude it. During the IPR proceedings, Juniper raised lack of written description/§ 112 when opposing multiple Swarm contingent motions to amend. IPR petitions, however, can't challenge claims on that basis.

not require a response."[22]

Moreover, Swarm'004 and '275 patents purport to disclose an improvement "harnessing the processing capacity" of the processors in "ubiquitous" plug-and-play devices that make up the Internet of Things.[23] According to the specification, these "ubiquitous" devices include virtually any off-the-shelf product that can connect to a network.[24] But Swarm's patents never describe how plug-and-play networking works, or how any of these ubiquitous devices establish a connection to a network on a plug-and-play basis.[25] And Swarm's patents also never describe any alternatives to the AppleTalk broadcast packets used in Juniper's Leong-AppleTalkBook combination. Thus, there's no discussion of alternatives or anything else in the specification that might arguably disclose the "without any communication" negative limitation or support the Board's "broad" construction.

Swarm's response almost entirely ignores Juniper's arguments based on the specification, while devoting nearly two pages to the specification's description of a "communication channel."[26] Swarm argues that it's "unclear why Juniper focuses

---

[22] Appx66.

[23] Appx85 ('004 patent at 1:22-41).

[24] *See*, *e.g.*, *id*. (at 1:33-38); Appx90 (at 11:35-45).

[25] *Cf*. Appx86 (at 3:34-44) ("[POSITAs] will appreciate that…devices and their associated co-processors may be added to a network on a 'plug and play' basis.").

[26] Resp. Br. at 32-33.

on this particular passage," despite there being only one sentence in Juniper's brief actually discussing it.[27] Contrary to what Swarm suggests, Juniper never argued here or in the IPRs that this passage constitutes lexicography. Rather, Juniper merely noted it as an example of a portion of the specification that uses "communication" to refer to a sequence of two-way messages, consistent with Juniper's understanding of the claim term.[28] After all, the specification uses the word "communication" nine times, and three are in this short passage.[29] The '004 and '275 patents don't include any claims that recite specific "communication channel" terminology. And the specification's other references to "communication" are consistent Juniper's understanding that the negative limitations exclude "communication" that involves a back-and-forth and management overhead.[30]

Thus, apart from two words in the claim language ("any" and "communication"), Swarm and the Board have identified no intrinsic evidence that supports the

---

[27] *Compare id.* at 32 *with* Juniper Br. at 27 ("For instance, when discussing a sequence of events involving a 'communication channel phase,' the specification describes two-way communication between the co-processor and the task pool.").

[28] Per the specification, the "communication channel phase" follows the co-processor "send[ing] an agent to the task pool" and the task pool "transmit[ting] an acknowledgement." Appx87 (at 6:20-30).

[29] Appx85 (at 2:66); Appx87 (at 6:28-33); Appx89-91 (at 10:48, 11:33, 13:39, 13:45, 13:63).

[30] *See*, *e.g.*, Appx89 (at 9:57-65, describing embodiment where co-processor/cell and task pool each have transmitter and receiver, and "communicate wirelessly").

Board's construction. Swarm repeats the Board's error of only checking the specification to see if it includes a "special definition" disproving its assumptions about the plain and ordinary meaning. And all relevant portions of the specification confirm that a POSITA reading the claims in view of the specification would understand that the challenged '004 and '275 claims preclude communication with the controller that utilizes resources, where the controller is actually involved in the communication and not just the passive or inadvertent recipient of a one-way broadcast packet that could be filtered or ignored.

### C. The Extrinsic Evidence From Both Experts Further Confirms That the Board's Construction Is Erroneous.

On October 6, 2022, Juniper deposed Swarm's expert, Dr. Nelson, in the '275 proceeding (IPR2022-00141).[31] This was Juniper's first deposition of Dr. Nelson in that IPR, so the questions focused on his August 7, 2022 declaration accompanying Swarm's response to the petition, and that was the first exhibit that Juniper marked and asked Dr. Nelson about.[32] But a few transcript pages later, when Juniper asked Dr. Nelson if he drafted his declaration, he testified:

> [A]s I -- as I look at this, though, there's something I would like to clarify in this at this time.
>
> When -- in the context of AppleTalkBook, there's two cases of broadcast going on. And in the first case, the broadcast is sent but a particular processor does not respond. And I would classify that as not a

---

[31] Appx6953.

[32] Appx6958 (at 6:11-15).

communication between the broadcaster and that particular processor.[33]

As noted, this led Swarm to argue that its expert, Dr. Nelson, wasn't credible.[34] The Board then agreed.[35] And although the Board commented that Swarm's criticism of its own expert "strikes us as unusual,"[36] the Board proceeded to adopt the same "communication" construction in both IPRs, despite that construction now contradicting the opinions of the experts on both sides.[37]

Swarm's response only addresses the small portion of Dr. Nelson testimony block-quoted above, while ignoring the consistent testimony that he provided in response to follow-up questions. For example, he also testified:

> Yes, the CPU refers to the '275 controller. And when I gave my clarification, I was -- what I was saying is I don't consider hearing a broadcast but not responding to the broadcast as a communication.[38]

---

[33] Appx6969-6970 (at 17:14-18:2) (further opining that when "processor does respond," he "would classify that as communication").

[34] Appx9314 (Swarm arguing that Dr. Nelson's "clarification during his deposition lacked any citation or reference, and should therefore be accorded little weight").

[35] Appx60 ("[H]is testimony on this particular issue should be accorded little to no weight."). Again, the Board included this Dr. Nelson deposition testimony in both IPR records. Appx10044. In the earlier of the two Final Written Decisions, the Board initially found Dr. Nelson's opinions on this issue "highly credible." Appx25. After considering this testimony, the Board found the opposite. Appx60. The Board noted this inconsistency when denying rehearing in IPR2021-01145, but declined to alter its conclusion. *See* Appx10045-10049.

[36] Appx62.

[37] *E.g.*, Appx66; *see also* note 35, *supra*.

[38] Appx7106 (at 154:17-21).

Juniper's brief quoted this and other examples that further confirm Dr. Nelson's understanding of "communication" in Swarm's patents and the negative limitation at issue.[39] Swarm doesn't acknowledge that testimony, or otherwise attempt to explain away the substance of Dr. Nelson's opinion that a broadcast to a recipient that doesn't respond is "not a communication."

And although Swarm quotes three reasons that the Board gave for finding Dr. Nelson not credible, Swarm doesn't offer any further explanation or defense of the Board's faulty analysis. For instance, the first and third reasons—that Dr. Nelson's testimony when cross-examined at deposition was "inconsistent with his declaration" and unsupported by citations[40]—provide no basis to disregard Dr. Nelson's retraction of the only extrinsic evidence that previously might've supported the Board's construction. That Dr. Nelson's testimony on the dispositive issue was inconsistent with his declaration (upon being asked who wrote it) and instead consistent with Juniper's expert (Dr. Weissman) is what makes it so significant, remarkable, and relevant. It's not a reason to dismiss Dr. Nelson's and Dr. Weissman's now-consistent expert opinions out of hand, as the Board did.[41]

---

[39] Juniper Br. at 31-32 (quoting, *inter alia*, Appx6972, Appx6974).

[40] Resp. Br. at 39.

[41] *See* Appx60–62. By contrast, there's nothing remarkable about an expert witness not citing the record when cross-examined, and the Board can't fairly hold that against Juniper. Regardless, the specification is cited throughout Dr. Nelson's Aug.

And the second reason that Swarm quotes—i.e., that Dr Nelson's statement was "directed to what qualifies as a communication in the context of AppleTalk-Book," not "what qualifies as a 'communication' in the context of the [] '275 patent"—lack support. As noted, Dr. Nelson repeatedly confirmed what he meant in further testimony, which included expressly linking his clarification to the meaning of "communication" in the challenged claims.[42] Neither party asked Dr. Nelson about the use of the word "communication" in AppleTalkBook. And he had no reason to testify about that. Again, Dr. Nelson provided this testimony in response to questions about his August 7 declaration in IPR2022-00141. In that declaration, he referred to "communication" 22 times, with every instance discussing the "without any communication" limitations or opining that the combination fails to teach it.[43] No reasonable factfinder could interpret Dr. Nelson's October 6 deposition testimony as being solely about the academic meaning of "communication" in AppleTalkBook, and not the opinions in his declaration or the salient issue of whether Leong-AppleTalkBook renders obvious "without any communication" in the challenged claims.[44]

---

7 declaration and provides support for his clarifying testimony.

[42] Appx7106 (at 154:17-21); Juniper Br. at 31-32 (additional examples).

[43] Appx5043-5107; *see*, *e.g.*, Appx5105 (discussing whether AppleTalkBook teaches "without any communication" limitation).

[44] The Board and Swarm also mischaracterize Dr. Nelson's testimony, since he

Moreover, Swarm ignores that in both IPRs, Dr. Nelson repeatedly provided declarations in support of Swarm's contingent motions to amend, describing Swarm's '004 and '275 patents' goal of reducing the burden on the CPU/controller and associating that burden with "responding" to messages.[45] As Juniper explained, and Swarm doesn't dispute, those Dr. Nelson opinions never associated the burden on the CPU/controller with one-way broadcasts that don't require a response.[46]

And contrary to what Swarm suggests, Dr. Weissman's testimony is consistent with Juniper's obviousness showing and arguments. For example, Swarm highlights Dr. Weissman's testimony that one-way messages could be "a type of communication in some sense."[47] But the meaning of communication in some sense, or in isolation, isn't relevant. And Dr. Weissman consistently opined that, for purposes of the negative limitation in question, one-way broadcasts that don't

---

never said the phrase "*communication* in the context of AppleTalkBook." Rather, he said "in the context of AppleTalkBook" when referring to "two cases of broadcast" it described. Then, he explained whether he would classify each as "communication," i.e., the issue addressed in his Aug. 7 declaration. This is consistent with his phrasing in other testimony. *See*, *e.g.*, Appx7120 ("My statements and my opinions in my report are in the context of AppleTalkBook….").

[45] *See*, *e.g.*, Appx8201 (The "burden placed on the CPU includes not only the burden of distributing tasks and responding to task completion interrupts, but also includes 'responding to other messages from co-processors.'"); Appx8202 (similar).

[46] Juniper Br. at 33-34 (additional examples).

[47] Resp. Br. at 41 (quoting Appx9144).

require a response don't qualify as communications.[48]

Thus, the Board didn't rely on extrinsic evidence for its "communication" construction.[49] No extrinsic evidence supports it. And the opinions of both sides' experts contradict it. Given that the intrinsic evidence also contradicts the Board's "communication" construction, as set forth above, this Court should reverse that erroneous construction and otherwise remand on all challenged claims.

## II. SWARM'S "PROCEDURALLY PROPER"ARGUMENT MISCHARACTERIZES THE RECORD.

Swarm argues that the Board's decisions were "procedurally proper," because the Board isn't required to give "prior notice of the exact construction [it] adopts," as long as that construction is "sufficiently similar to a construction disputed by the parties."[50] But Juniper didn't seek to overturn the Board's decisions on that basis. Rather, Juniper argued that the Board's construction was wrong, and that substantial evidence doesn't support the Board's non-obviousness conclusions even under that wrong construction.

---

[48] *See*, *e.g.*, Appx5675 (at 247:2-7) ("[J]ust because a broadcast packet happens to arrive at Leong's surveying unit, that doesn't mean [it] communicates with the node that sent the broadcast packet."); Appx608-609 (describing communication in context of Swarm patents); Appx7218 (discussing Dr. Nelson's 10-6-22 deposition testimony clarifying or withdrawing previous opinions).

[49] *See*, *e.g.*, Appx66. As noted, the Board initially found Dr. Nelson credible in IPR2021-01145, but rescinded that finding when denying rehearing.

[50] Resp. Br. at 28-29.

Nonetheless, it's notable that the Board issued its IPR2021-01445 decision, which first adopted the dispositive "communication" construction, without the benefit of any previous briefing from the parties specifically addressing claim construction. Additionally, the unusual timeline of events in the IPRs explains why the record developed as it did, and is relevant to issues including AppleTalkBook's "zones" teachings and Swarm's assertions that certain arguments were belated.

And this Court should disregard Swarm's attempt to distort the timeline that led to the dispositive "communication" construction. For example, Swarm states that "the parties have disputed the construction of this limitation since the earliest stages of the IPR proceedings, and Juniper had expressly requested that the Board construe this disputed claim term."[51] But to support that, Swarm only cites Juniper's March 7, 2023 Additional Briefing.[52] Juniper filed that after the conclusion of all ordinary post-institution briefing in the '275 proceeding (IPR2022-00141), and a month after the Board's Final Written Decision construing "communication" in the '004 proceeding (IPR2021-01445).[53]

Contrary to what Swarm states, neither party requested construction of any claim terms in the institution phase. Both petitions stated: "For the purposes of this

---

[51] Appx9838-9840; Appx9843

[52] Resp. Br. at 29 (citing Appx9838-9840; Appx9843).

[53] *Compare* Appx9848 *with* Appx1

proceeding, [Juniper] construes all terms as having their ordinary and customary meanings."[54] And Swarm's preliminary responses didn't dispute Juniper's understanding of the ordinary and customary meaning of "without any communication," or any other term.[55] Thus, the Board concluded in its institution decisions that it "need not expressly construe any claim terms."[56]

Thereafter, in the '004 proceeding (IPR2021-01445), Swarm's post-institution response to the petition once again didn't address claim construction.[57] And in the '275 proceeding (IPR2022-00141), where Swarm's response included a list of 16 terms "Petitioner and Patent Owner apparently dispute," Swarm didn't elaborate or propose any constructions of those terms.[58] And the particular "without any communication" limitation at issue here wasn't on that list.[59]

Thus, the earliest that either party proposed a construction for any claim term was when Juniper did so in its March 7, 2023 Additional Briefing in

---

[54] Appx214-215; Appx1480.

[55] Appx4053; Appx4213 ("Patent Owner does not address claim construction").

[56] *Id*.

[57] Appx12.

[58] Appx4978.

[59] The seventh term on the list is "without any communication *between the first co-processor* and the controller," i.e., a different "without any communication" limitation. Appx4978 (emphasis added); *see also* Appx107 ('275 claim 1, describing "first co-processor" configured to retrieve a task, process it, and update task pool "without any communication between the first co-processor and the controller").

IPR2022-00141.[60] Juniper requested that the Board "expressly" construe "communication" at that time, given the apparently dispositive construction of this term in the Board's February 7, 2023 decision in IPR2021-01445 and conflicting language in that decision.[61] The Board's April 20, 2023 decision denying rehearing in IPR2021-01445 then confirmed that the Board had construed "communication" to include "general broadcasts to every network node, even if the node discards the broadcast and/or doesn't respond."[62] And, six days later, Board again relied on this "communication" construction in the final written decision in IPR2022-00141.[63]

## III. SUBSTANTIAL EVIDENCE DOESN'T SUPPORT THE BOARD'S DECISIONS, EVEN UNDER ITS CONSTRUCTION.

This Court observed in *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, that prior-art combinations that "sometimes meet the claim elements are sufficient to show obviousness."[64] As this Court further explained:

> Just as an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes, a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches

---

[60] Appx9838-9840; *see also* Appx9557-9570 (Juniper's IPR2021-01445 rehearing request, filed same day).

[61] Appx9839; *see* Juniper Br. at 18; Appx12 (IPR2021-01445 FWD stating: "For purposes of this Decision, we need not expressly construe any claim terms.").

[62] Appx10046.

[63] Appx66 (Board confirming it "broadly construe[d]" communication "as including, among other things, one-way messaging that does not require a response").

[64] 843 F.3d 1315, 1337 (Fed. Cir. 2016).

that aspect of the invention.[65]

And this well-established rule also applies to negative limitations, like the "without any communication" limitation at issue.[66]

Here, the Board concluded that the Leong-AppleTalkBook combination didn't satisfy the challenged claims' requirement for adding a co-processor "on a plug-and-plug basis without any communication with the controller." Accordingly, to affirm the Board's conclusions, there must be substantial evidence in the record showing that the Leong-AppleTalkBook combination doesn't *sometimes* satisfy this "without any communication" limitation.[67] In other words (that omit the double negative): substantial evidence must show that AppleTalk broadcast packets necessarily or always constitute the "communication" that the limitation prohibits. As Juniper explained, the record lacks such evidence for two reasons: (1) assuming that these broadcast packets are sent to the controller, they wouldn't necessarily communicate with or impart any information to the controller; and (2) given AppleTalkBook's "zones" teachings, these broadcast packets wouldn't

---

[65] 843 F.3d at 1337.

[66] *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322-23 (Fed. Cir. 2005) (concluding that reference disclosing optional antioxidants taught negative limitation "essentially free of antioxidants"); *Ex Parte Mccormick*, Appeal 2021-002928, 2021 WL 5411155, at *2 (P.T.A.B. Nov. 17, 2021) (finding that reference disclosing that "dye is optional" taught negative limitation "devoid of…dye").

[67] *See*, *e.g.*, *Power Integrations*, 843 F.3d at 1337.

necessarily be sent to the controller at all. Swarm's arguments in response contravene this Court's precedents and fail to rebut both reasons.

### A. No Record Evidence Shows That a Broadcast Packet Necessarily Would Impart Information to the Controller.

Swarm incorrectly assumes that if an AppleTalk broadcast packet contains information, this information necessarily would be communicated to the controller any time an AppleTalk broadcast packet is sent to the controller. That misses a step—namely, the communication. As Juniper explained, and Swarm's response doesn't dispute, "communication with" a recipient implies that information is imparted to the recipient.[68] Contrary to Swarm's unsupported assumption, the act of transporting something containing information isn't necessarily the same thing. Even if a message is sent to every device on a network, it doesn't logically follow that every device would be configured to understand the information in the message, or that every device wouldn't automatically discard it.

Juniper's brief analogized this to a mailed letter:

> [I]t would generally be inaccurate or misleading for one person to say that they communicated with another, if all the first person did was mail a letter that the Post Office returned to sender. Similarly, in computer networking, devices routinely discard or ignore packets for reasons including invalid addresses, header errors, and expired counters.[69]

---

[68] *See* Juniper Br. at 36-37.

[69] *Id*.

Like a mailed letter, the broadcast packet could be discarded or filtered, in which case there would be no communication with the controller.[70] Swarm doesn't respond to that analogy, or otherwise dispute that the controller could discard or ignore packets for a variety of reasons. And Swarm doesn't identify any substantial evidence showing that if an AppleTalk broadcast packet is sent to the Leong-AppleTalkBook combination's controller, it necessarily would impart or communicate information to the controller.

To be sure, Swarm relies on AppleTalkBook's description of broadcast packets as "critical to the [protocol's] ease-of-use" and the Board's finding that the Leong-AppleTalkBook combination "expressly require[s] AppleTalk broadcast packets to facilitate the integration/configuration of co-processors on a plug-and-play basis."[71] But that merely shows that the Leong-AppleTalkBook combination would use broadcast packets, not that those broadcast packet necessarily would impart or communicate any information to the controller.

And substantial-evidence review must take into account evidence that

---

[70] *See generally* Appx7223 (Dr. Weissman describing well-known techniques to avoid flooding network that include "downstream devices dropping, or filtering" packets); Appx5675 (Dr. Weissman testifying that broadcast packet arriving doesn't mean there's communication); Appx9726-9727 (Dr. Nelson testifying he didn't consider filtering); Appx9837-9838 (Juniper 3-7-23 Additional Briefing).

[71] Resp. Br. at 43-44 (citing Appx803, Appx58).

"detracts from the [Board's] factual determinations."[72] Here, throughout the IPRs, Juniper and its expert explained why the Leong-AppleTalkBook combination satisfies the limitation of adding a co-processor "on a plug-and-play basis without any communication with the controller." And the Board credited that explanation in its IPR2022-00141 institution decision (before reversing course in both final decisions, without reconciling its previous reasoning).[73] That institution decision cited this Court's precedent on how prior art may teach a negative limitation.[74] And it correctly found that AppleTalkBook "teach[es] the negative limitation" here, because it doesn't "suggest the necessity" of "communication between the new co-processor and the controller" and the co-processors are added "without a system administrator assigning an address…and distributing it to the network."[75] Yet, Swarm doesn't respond to Juniper's arguments block-quoting that decision, or otherwise explain how AppleTalkBook failed to comply with the applicable authorities on how prior art may teach a negative limitation.

Thus, regardless of whether "communication with the controller" includes one-way messages, substantial evidence doesn't show that an AppleTalk broadcast

---

[72] *In re Glatt Air Techniques, Inc.*, 630 F.3d 1026, 1029 (Fed. Cir. 2011).

[73] Juniper Br. at 15-16, 38 (discussing institution decision).

[74] Appx4239 (citing *AC Techs., S.A. v. Amazon.com, Inc.*, 912 F.3d 1358 (Fed. Cir. 2019), *Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001 (Fed. Cir. 2009)).

[75] Appx4239.

packet necessarily would impart or communicate any information to the Leong-AppleTalkBook combination's controller. Accordingly, this Court should reverse the Board's conclusions on that negative limitation.

### B. The Board Incorrectly Failed to Consider AppleTalkBook's "Zones" Teachings Indicating That the Broadcast Packet Wouldn't Be Sent to the Controller.

#### 1. The "Zones" Discussion Responded to Swarm's Arguments.

In IPRs, reply arguments are proper if they respond to the patent owner's contentions and aren't part of a new theory of unpatentability.[76] Here, what the Board disparaged as "Juniper's zone theory" was directly responsive to the arguments Swarm raised in its responses to the petitions. And Juniper has always relied on the same components and reasoning to show that the combination of Leong's processing architecture with AppleTalkBook's automatic configuration renders the challenged claims obvious. As this Court has repeatedly held, using the same prior art to advance the same legal theory, as Juniper did here, isn't an improper new argument.[77]

Indeed, this Court confirmed in *Ariosa Diagnostics v. Verinata Health, Inc.*, which Swarm cites, that an argument is new where the petitioner discusses

---

[76] *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1008 (Fed. Cir. 2023).

[77] *See*, *e.g.*, *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706 (Fed. Cir. 2020); *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1380 (Fed. Cir. 2018).

"previously unidentified portions of a prior-art reference to make a meaningfully distinct contention."[78] Swarm focuses on "previously unidentified," but fails to contend with the "meaningfully distinct" portion of this test. Citing a passage in an already-disclosed reference that further supports the same obviousness theory, as Juniper did, isn't a meaningfully distinct new theory. And contrary to what Swarm suggests,[79] Juniper's obviousness theory here has always relied on the combination of Leong and AppleTalkBook.[80]

And Juniper's discussion of AppleTalkBook's zones, in particular, was never a new prima facie theory of unpatentability. Rather, it showed that a POSITA would've known and used techniques to separate network elements to prevent unnecessary traffic. As Juniper showed in the petitioners (and the Board found), adding co-processors in the Leong-AppleTalkBook combination wouldn't require the controller to respond to messages or perform any management tasks—i.e., there's no suggestion that communicating with it would be a necessity or

---

[78] 805 F.3d 1359, 1367 (Fed. Cir. 2015).

[79] Swarm argues that nothing in Leong "suggest[s] that [the controller] should be assigned to a separate…zone." Resp. Br. at 49. That lacks merit, because Juniper didn't rely on Leong alone, or for the broadcast packets teaching "plug-and-play," to which AppleTalkBook's zones are relevant.

[80] *See*, *e.g.*, Appx224 (Leong-AppleTalkBook combination "renders obvious[] each and every element of the Challenged Claims"); Appx238-244 (Claim Element 1.5).

would serve any function.[81] When Swarm's responses argued that AppleTalkBook teaches away from its inventions, on the basis that every broadcast packet necessarily qualifies as an excluded communication, it was proper for Juniper to cite other passages in AppleTalkBook proving Swarm's argument incorrect. This Court has repeatedly endorsed similar uses of prior art, where references are used to show the background knowledge of a POSITA.[82] Further, this Court has found reversible error where the Board refuses to consider what a reference teaches about the state of the prior art and fails to consider a reference for everything it teaches.[83]

And Swarm's attempt to distinguish *Corephotonics v. Apple* lacks merit. Contrary to Swarm's arguments, the underlying concerns here are the same, and the facts are analogous.[84] The *Corephotonics* court focused on the fact that the patent owner "had sufficient notice" of the petitioner's position and "adequate opportunity to respond."[85] Swarm doesn't dispute that it had the opportunity to respond and sufficient notice here. Swarm could've addressed AppleTalkBook's

---

[81] *See*, *e.g.*, Juniper Br. at 15-16; Appx238-244; Appx604-610.

[82] *E.g.*, *Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1380-81 (Fed. Cir. 2018) (New evidence is proper if used "to document the knowledge [POSITA] would bring to bear in reading the [cited] prior art."); *Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1369 (Fed. Cir. 2016); *Ariosa*, 805 F.3d at 1365.

[83] *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012).

[84] *See* 84 F.4th at 1008, 1010.

[85] *Id.* at 1010.

zones in the institution phase, when it first made the argument that broadcast packets teach away.[86] And after Juniper discussed AppleTalkBook's zones, Swarm had the opportunity to respond in two sur-replies, plus additional briefing.[87]

Moreover, to be responsive under the *Corephotonics* framework, evidence in a reply must be a fair extension of a previous argument, and must have a "nexus" to an argument the patent owner raised.[88] Swarm doesn't affirmatively dispute that Juniper's reliance on AppleTalkBook's teachings qualifies. Instead, it chastises the petitions for failing to preemptively describe how the Leong-AppleTalkBook combination teaches "without any communication" under the construction that the Board adopted on its own initiative in its final decisions. As this Court held in *Axonics, Inc. v. Medtronic, Inc.*, however, nothing "require[es] a petition to describe all possible and reasonable claim constructions and to present invalidity theories under those constructions."[89] And Swarm offers no reason to depart from that rule here. There was no need to address zones in the petitions because the plain and ordinary meaning of "without any communication," as Dr. Weissman confirmed, requires the controller to be involved in the communication, rather than

---

[86] *See* Juniper Br. at 15.

[87] *See* Appx6804; Appx8130; Appx9300.

[88] *Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1385 (Fed. Cir. 2023).

[89] 75 F.4th 1374, 1380-81 (Fed. Cir. 2023).

a passive recipient of irrelevant traffic that it could just discard. And Juniper's petitions properly explained why the Leong-AppleTalkBook combination renders this negative limitation obvious.[90] It was only necessary to refer to zones after Swarm argued, incorrectly, that AppleTalkBook teaches away.

And contrary to what Swarm suggests, Juniper's discussion of networking elements like bridges and gateways also isn't new. In the IPR2021-01445 petition, for example, Juniper described Leong's processing units as "connected using standard network technology."[91] Swarm doesn't dispute that "standard network technology" includes bridges and gateways. Despite that, Swarm suggests that referring to them is new, because AppleTalkBook describes certain embodiments with specialized hardware in (i.e., Apple products).[92] Swarm's argument ignores that Juniper wasn't required to, and didn't, bodily incorporate this specialized hardware in its combination. Rather, Juniper relied on AppleTalkBook's plug-and-play teachings.[93] Thus, to the extent the petitions didn't already provide notice, Juniper's references to standard networking technology like bridges and gateways

---

[90] Appx239-240 (claim element 1.5).

[91] Appx251.

[92] *See* Juniper Br. at 51-52.

[93] *E.g.*, Appx17.

stem from the same theory and Leong-AppleTalkBook combination, and aren't new under the *Corephotonics* framework.

Accordingly, for the reasons above and in Juniper's opening brief, invoking AppleTalkBook's zones was proper in Juniper's replies, and Juniper properly raised those teachings again in the additional briefing after the IPR2021-01445 decision. The Board wrongly excluded this evidence in both instances.

**2. Given AppleTalkBook's "Zones," Substantial Evidence Doesn't Show That Communication Will Always Occur.**

As noted, to affirm the Board's decision in these proceedings, there must be substantial evidence that the combination's broadcast packets always or necessarily constitute the communication prohibited by the "without any communication with the controller" negative limitation. And here, nothing that Swarm argues changes the fact that the evidence the Board ignored shows that a POSITA would use zones to separate the controller from the co-processor.

Swarm doesn't dispute that what Leong calls a network can also be an AppleTalkBook internetwork (and thus use zones).[94] Swarm also doesn't dispute that one of the two purposes of zones is to limit unnecessary traffic since broadcast

[94] As noted, the Board's alternative findings incorrectly assume that AppleTalk-Book and Leong use "network" in exactly the same way, and that being on the same network (in Leong's sense or the ordinary sense) necessarily means some-thing would be in the same zone. This ignores AppleTalkBook's distinction be-tween "networks" and "internetworks." *See* Juniper Br. at 46-51.

packets travel only to other devices in the same network within a zone.[95] In its reply in IPR 2021-00141, Juniper confirmed that "Leong co-processors need only identify the task pool to obtain work."[96] Thus, the controller and the co-processors need not share network resources and don't work closely together themselves. Notably, AppleTalkBook's zones don't prevent all traffic from crossing zone boundaries, and so wouldn't interfere with the combination.[97] AppleTalkBook also doesn't require devices to be in the same zone to exchange information.[98] Instead, using their experience, a POSITA could decide that segregating network traffic from the controller by using zones was more valuable than the "simplified" communication that would result from placing all devices in the same zone. Such an embodiment of zones would necessarily prevent broadcast packets from crossing zone boundaries.

Swarm doesn't identify any evidence that such an embodiment is impossible. And Swarm doesn't identify any evidence that broadcast packets would necessarily constitute the excluded communication with the controller in an embodiment using zones. Rather, the record shows that a POSITA would've used

---

[95] *See* Appx915 ("Conveniently, broadcast packets travel only to the networks within the zone for which they are intended.").

[96] Appx6399.

[97] *See* Appx915.

[98] *Cf id*.

zones to prevent unnecessary messages, and thus would've used zones to separate the controller from the co-processors. Thus, even assuming that bare receipt of a broadcast packet constitutes "communication with the controller," zones prevent receipt altogether. And the Board erred in failing to consider that evidence.

## CONCLUSION

The Board's decisions hinge on a claim construction that contradicts the intrinsic and extrinsic evidence, including all relevant portions of the specification and both sides' experts' opinions. For that reason, and because the Board's decisions also aren't supported by substantial evidence, this Court should reverse and remand for further proceedings.

March 18, 2024

Respectfully submitted,

*R. William Sigler*
Alan M. Fisch
R. William Sigler
Jeffrey M. Saltman
Matthew R. Benner
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Suite 400
Washington, DC 20015
202.362.3500

*Counsel for Appellant*
*Juniper Networks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system on March 18, 2024.

Dated: March 18, 2024

*R. William Sigler*
R. William Sigler

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b). This brief contains 6,870 words, excluding parts exempted by Federal Rule of Appellate Procedure and 32 and Federal Circuit Rule 32.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6). This brief uses a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.

Dated: March 18, 2024

*R. William Sigler*
R. William Sigler